UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

CAMERON BONNETT,
Plaintiff,

vs.

**COMPLAINT**

SONNY PERDUE, as
Secretary, United States Department
of Agriculture,
Defendant.
_____/

Plaintiff, Cameron Bonnett, through his undersigned counsel, hereby files this Complaint, against the Defendant, Sonny Perdue, as Secretary, United States Department of Agriculture; and in support hereof, Plaintiff states as follows:

# I.
# JURISDICTION

1. This action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. Section 701, *et seq.*, and this statute contains the exclusive remedy for United States Department of Agriculture employees, who are not accommodated based upon their status, as "qualified individuals with disabilities; and or who allege that they have been "perceived," or "regarded as" being disabled, by their agency head.

2. Plaintiff also brings this case under the anti-retaliation provision of the Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a), which forbids discrimination and retaliation in employment, against employees, by federal agencies; moreover, the anti-

1

retaliation provision of the Rehabilitation Act, incorporates by reference Section 12203 (a) of the Americans with Disabilities Act, which provides in relevant part, that "no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by the Rehabilitation Act," and under this Act, an aggrieved federal employee, such as the Plaintiff, is entitled to the "remedies, procedures and rights," as set forth in Title VII of the Civil Rights Act of 1964, as amended.

3. Venue is properly placed in this district, pursuant to 28 U.S.C. Section 1391(b), because for at least a substantive portion of the time period, when the predicate discriminatory and retaliatory acts occurred, as perpetrated by Agency management, Plaintiff worked for the Defendant, the U.S. Department of Agriculture, within the Agency's internal division, the U.S. Forest Service, from his residence address, located in Oakland Park, Broward County, Florida, located in the Southern District of Florida, *see* 42 U.S.C. Section 2000e-5 (f)(3); 29 U.S.C. Section 794 (a); specifically, during the filing of Equal Employment Opportunity ("EEO") Complaints Nos. FS-2010-00629 and FS-2011 00015, Plaintiff resided and worked in Oakland Park, Broward County, Florida, for the Defendant Agency.

4. On or about August 8, 2010 and February 4, 2011, Plaintiff filed a formal complaint of employment discrimination, or an Equal Employment Opportunity ("EEO") Complaint, with the United States Department of Agriculture, United States Forest Service, alleging claims of disability discrimination.

5. On or about April 12, 2011, Plaintiff filed an additional formal complaint of employment discrimination, or an Equal Employment Opportunity ("EEO") Complaint, with the United

States Department of Agriculture, United States Forest Service, alleging claims of disability discrimination and retaliation.

6. Although the Plaintiff began his participation in the EEO administrative process, he subsequently requested that the Equal Employment Opportunity Commission ("EEOC," or the Commission), cease processing her administrative complaint, and in accordance with that request, on February 20, 2020, the Commission entered an order, dismissing the administrative hearing request; thereby allowing the Plaintiff to pursue her remedies in federal district court. [A copy of the Commission's Order of Dismissal is attached hereto, as **EXHIBIT A**].

7. Plaintiff has complied with all pertinent administrative prerequisites, which are necessary to file a formal lawsuit, in federal district court, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. Section 701, *et seq.*, and 29 U.S.C. Section 794 (a), in that he had filed appropriate charge(s) of discrimination, within the applicable time frames; and hence, he has exhausted all pertinent administrative procedures; and he has performed all conditions precedent to filing suit in federal district court.

8. Therefore, Plaintiff is now authorized to file this action in federal district court against the Defendant.

## II.
## PARTIES

9. For at least a significant portion of the time period when the predicate discriminatory acts occurred, and or for a period of at least two years, Plaintiff, Cameron Bonnett

3

("BONNETT"), was a resident of Oakland Park, Broward County, Florida; and he was employed by the Defendant as a Landscape Architect, GS-11, for the U.S. Forest Service; and he was previously employed by the Defendant over a period of seventeen years.

10. Defendant, Sonny Perdue, is the Agency Head of the United States Department of Agriculture, United States Forest Service, the Division where Plaintiff was previously employed; and he is responsible for administering the personnel and human resources policies of the Agency, as well as monitoring legal compliance policies; as well as the actions of managers, supervisors and employees, employed by the Agency, the United States Department of Agriculture, United States Forest Service.

11. Defendant, Sonny Perdue, is the Agency Head of the United States Department of Agriculture, United States Forest Service; the Division where Plaintiff was previously employed; and the Agency is an, "employer," within the meaning of the Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a), and furthermore, the Agency, is subject to the prohibitions and the affirmative obligations of the statute.

## III.
## FACTS

12. BONNETT held the position of Landscape Architect, GS-11, under his prior supervisor, Janice Spencer ("SPENCER"), from 2003-2007, he was rated as being fully successful, in his performance evaluations under SPENCER'S supervision; and thereafter, when SPENCER served as the Complainant's mentor, while he held this same position, she discerned no major problems with his overall work product in this same position.

13. Plaintiff was performing more complex work while he was under SPENCER'S supervision; and as previously stated, during SPENCER'S prior supervision of his work, his job evaluations were indeed fully satisfactory.

14. Plaintiff had held his position with the Agency for over seventeen (17) years, despite being diagnosed with both Attention Deficit Disorder ("ADD") and a reading disability, by various healthcare professionals, in September, 2009, and in May, 2001, respectively.

15. Barbara Ott ("OTT") became the Complainant's supervisor, during the following calendar year, 2008, and during OTT'S direct supervision of BONNETT, SPENCER, who was then serving as BONNETT'S mentor, maintained that he "could still produce a successful (work) product;" but in fact, OTT had begun to orchestrate a campaign to place negative references in BONNETT'S job performance history, apparently in an effort to cast doubt on his continued effectiveness as an Agency employee.

16. When OTT became Complainant's supervisor in 2008, she removed the reasonable accommodations, which he had been receiving from the Agency, during his first five years in this position, with TEAMS.

17. Moreover, OTT refused to consider Complainant's disabilities in the production of his work assignments, by for example, limiting the use of tabular data in his reports; furthermore, she demanded the production of additional medical documentation, which she subsequently ignored; illustrating the fact that OTT only gave, in effect, "lip service," to a meaningful interactive process.

18. Although the Plaintiff previously worked for the Agency service known as, the "enterprise program," within the Forest Service, also known as, "TEAMS," Agency management had not complained about his use of time to complete Agency projects, until after 2009; and moreover, after 2009, during the period when SPENCER had served as Plaintiff's mentor, she was allotted six (6) hours per month to perform this function; and moreover, SPENCER was never told by Agency management, that her on-going work as BONNETT'S mentor, was somehow creating an undue hardship for the Agency.

19. SPENCER, serving as Mentor to Complainant, under the supervision of OTT, maintained that BONNETT could perform the essential functions of his position, as a Landscape Architect.

20. Despite making the determination on the Plaintiff's employment status, that he was indeed a qualified individual with a disability, the Agency failed to prepare the appropriate document, the AD 1164, in order to properly respond to BONNETT'S requests for workplace accommodations, until November 29, 2010, over one year later.

21. The requested accommodations were rejected, such as the request for additional time to complete job assignments, even though the request had been documented by a psychologist.

22. OTT never engaged in an *interactive process*, with the Plaintiff, in good faith; or with benevolent intentions; for example, on December 6, 2009, OTT commented to the Plaintiff, "I am concerned that your current job at TEAMS may not be a good fit for you given your

disability. We might need to look for a position in another FS (Forest Service) unit or another agency that would be better suited to your skills and abilities."

23. Complainant was not granted his requests for reasonable accommodations on April 30, 2010 and May 3, 2010. He had previously requested the following reasonable accommodations:

a. <u>First Request (February 4, 2009)</u> During the Complainant's Performance Plan Review, he had requested additional time to complete his work; after OTT, had stated that she was going to decrease his allotted time;

b. <u>Second Request (February 19, 2009)</u> Complainant had requested Kurzweil 3000 Software and Dragon Naturally Speaking Software, to assist him in the reading and writing of his reports. OTT initially denied his request allegedly due to cost considerations; even though a co-worker had been provided with the Dragon Naturally Speaking Software. CAP reversed OTT'S initial denial and approved the purchase of the Kurzweil 3000 Software on July 1, 2009; and only at that point did OTT authorize the purchase of the Dragon Naturally Speaking Software;

c. <u>Third Request (August 26, 2009)</u> Complainant requested additional time in which to complete his reading and writing tasks; however, OTT and VOGEL verbally denied the request;

d. <u>Fourth Request (November 16, 2009).</u> YOUNG received Complainant's requests for the following accommodations: (i) a work environment which is generally free of distractions; (ii) twice as much time as a non-disabled co-worker to complete written reports; (iii) granting the assistance of a writer/editor; (iv) allowing the preparation of more than one draft report; (v) the use of an experienced mentor. OTT denied these requests during a conference call with YOUNG on March 12, 2010;

e. <u>Fifth Request (March 17, 2010)</u> YOUNG sent Form AD-1163, on which Complainant had identified his Fourth Request on March 10, 2010, to document OTT'S denial of Complainant's request on the Form AD-1164 accommodation form. During a telephone conference on April 30, 2010, OTT stated that she would be issuing a denial. However, in an e-mail message dated May 3, 2010, OTT stated that the denial could only be completed by YOUNG or by Richard Espinosa ("ESPINOSA"), the Agency's Mission Area Designee. Significantly, the Agency denied the requested accommodations, but proceeded

7

to completed the approval reporting form, Form AD-1164, as the accommodation reporting form; management never completed the denial of an accommodation form.

f. <u>Sixth Request (July 26, 2010)</u> Complainant repeated his Fourth and Fifth Requests as described above.

g. <u>Seventh Request. (August 17, 2010)</u> Complainant repeated his Fourth and Fifth Requests as described above.

h. <u>Eighth Request (October 1, 2010)</u> On October 19, 2010, OTT informed Complainant by telephone that she would allow him an additional 20% of allotted time to complete to complete his Front County Report, as well as an additional 20% of allotted time for the completion of reading and writing tasks

24. Throughout this process, management failed to address the fact that for the prior five years of the Plaintiff's employment with TEAMS, the Agency had indeed provided him with *de facto* accommodations, which allowed him to complete the essential functions of his position, as confirmed by his performance appraisals.

25. Moreover, Sheila Young ("YOUNG"), the Agency's National Disability Employment Program Manager, blatantly ignored and or disregarded the recommendations of the Easter Seals Vocational Counselor, Ms. Sue Gist ("GIST"), as well as the evaluative recommendations of the treating clinical psychologist, Dr. Jorge Daruna. ("DARUNA").

26. GIST, in conjunction with DARUNA, had issued a comprehensive vocational report to YOUNG, with a clear statement of the needed accommodations; moreover, OTT submitted to the Complainant, an AD-1164 Form, which had been completed by YOUNG; the form effectively denied the accommodations, which had been granted to Complainant, for the five-year period prior to 2009.

27. On August 25, 2010, YOUNG sent Complainant correspondence indicating that the parties are "at the accommodation of last resort," which means that, reassignment, was the only viable option; and on September 17, 2010, YOUNG indicated to Complainant that his case had been closed.

28. The Agency did not properly arrive at the "reassignment" process in good faith, since it failed to reasonably exhaust the required "interactive process;" rather than making a reasonable effort in crafting an accommodation, OTT proceeded to reduce the number of hours allotted to Complainant for the completion of his tasks; the time lines were so stringent that the Complainant was then required to work substantial additional hours per week.

29. Complainant was then placed on a Performance Improvement Plan, on December 16, 2010 prior to the initiation of a job search, under a purported re-assignment process; therefore, in effect, the Agency concluded that Complainant could not perform his job functions, after management took away accommodations, which he had been previously granted for approximately five years.

30. The period of the Performance Improvement Plan continued for over one year.

31. Complainant was issued a Notice of Proposed Removal, on April 27, 2012, with a proposed termination within thirty days thereafter.

32. As of December 27, 2012, Complainant was constructively discharged from his position with the Agency, because on that date, his application for disability retirement with the Office of Personnel Management was approved.

33. Agency management engaged in unlawful discrimination by failing to provide reasonable accommodations, which would not have presented an undue hardship to supervisory personnel, and then, a further substantive legal violation occurred when management retaliated against Plaintiff, based upon his opposition to management's failure to accommodate, which ultimately resulted in his constructive termination from employment with the Agency.

**COUNT I**
**(VIOLATION OF THE REHABILITATION ACT,**
**DENIAL OF A REASONABLE ACCOMMODATION)**

34. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1-33 of the Complaint, as if fully set forth herein.

35. BONNETT possessed the requisite knowledge, skill and experience, to perform the essential functions of an employee, under the job classification of Landscape Architect, GS-11, with the U.S. Department of Agriculture, U.S. Forest Service.

36. BONNETT was and continues to be a "qualified individual with a disability," under the Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a).

37. Management failed and or refused to accommodate the Plaintiff's disabilities; and in effect, the Agency removed prior reasonable accommodations, which had been previously granted to him, by other supervisory personnel.

38. The Plaintiff was in effect, constructively discharged from his position, because management failed and or refused to accommodate his disabilities.

39. The Defendant violated the Rehabilitation Act of 1973, 29 U.S.C. Section 701, *et seq.*, by failing to accommodate him as a "qualified individual with a disability," because the management of the Defendant perceived him, and / or regarded him, as having a disability, which ultimately resulted in his discharge from employment.

40. As a result of the Defendant's unlawful conduct, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, CAMERON BONNETT, respectfully prays that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

B) Grant an award of front pay and back pay against the Defendant;

C) Grant an award of compensatory damages against the Defendant; and

D) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just, proper and equitable.

### COUNT II
### (VIOLATION OF THE REHABILITATION ACT, RETALIATION)

41. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1-33 of the Complaint, as if fully set forth herein.

42. The anti-retaliation provision of the Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a), forbids discrimination and retaliation in employment, against employees, by federal agencies; and moreover, the anti-retaliation provision of the Rehabilitation Act, incorporates by reference Section 12203 (a) of the Americans with Disabilities Act, which provides in relevant part, that "no person shall discriminate against an individual because such individual has opposed any act, or practice, made unlawful by the Rehabilitation Act," and under this Act, an aggrieved federal employee, such as the Plaintiff, is entitled to the "remedies, procedures and rights," as set forth in Title VII of the Civil Rights Act of 1964, as amended.

43. The Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a), prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions and privileges of one's employment, based upon the employee's opposition to policies and procedures, which discriminate against employees, who exhibit medical conditions, which indicate that they are indeed "qualified individuals with disabilities," under the Rehabilitation Act of 1973.

44. The Plaintiff is a "qualified individual with a disability," and he requested numerous reasonable accommodations in the workplace, beginning in 2009 and continuing in 2010; thereafter, the requests for reasonable accommodations were denied; and Plaintiff was then placed on performance improvement plans, with no substantive factual basis, which ultimately resulted in his constructive discharge from employment.

45. On December 16, 2010, Plaintiff was unjustifiably placed on a performance improvement plan, which ultimately led to the issuance of a proposed notice of removal, and eventually, his constructive termination from employment in April of 2012.

46. The Plaintiff's constructive discharge was effectuated solely as a result of impermissible retaliation, which was imposed as a direct and proximate result of Plaintiff's complaints of disability discrimination, based upon his status, as a "qualified individual with a disability."

47. As a direct and proximate result of the Defendant's unlawful acts, BONNETT has suffered great and irreparable economic harm and other associated losses.

48. Moreover, as a further result of the Defendant's unlawful retaliatory conduct, the Plaintiff has been compelled to retain undersigned counsel and he has incurred fees and costs.

**WHEREFORE**, the Plaintiff, CAMERON BONNETT, respectfully requests that this Court enter judgment against the Defendant, SONNY PERDUE as Secretary of the United States Department of Agriculture, and find that the Defendant indeed violated the anti-retaliation provision of the Rehabilitation Act of 1973, *see*, 29 U.S.C. Section 791, Section 794 (a), which forbids discrimination and retaliation in employment, against employees, by federal agencies; the anti-retaliation provision of the Rehabilitation Act, incorporates by reference Section 12203 (a) of the Americans with Disabilities Act, which provides in relevant part, that "no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by the Rehabilitation Act," and under this Act, an aggrieved federal employee, such as the Plaintiff, is entitled to the

"remedies, procedures and rights," as set forth in Title VII of the Civil Rights Act of 1964, as amended, and as a result thereof, the Court should order the following relief:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

B) Grant an award of front pay and back pay against the Defendant;

C) Grant an award of compensatory damages against the Defendant; and

D) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just, proper and equitable.

### Demand for Jury Trial

The Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-Mail: labor@markjberkolwitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
By: Mark J. Berkowitz

Dated on this 16th day of March, 2020.